R. H. USHER v. THE STATE.

No. 2693.   Decided May 4, 1904.

**1.—Continuance—Forgery—Fictitious Witness—Affidavits.**

Where the affidavits filed by the State showed that the witness for whose testimony a continuance by the defendant was asked for, controverted not only the truth of such testimony, but showed that no such person existed, and that he could not be found by the officers, and indicated the improbability that the witness could have been found at any time and brought into court to testify, there was no error in overruling the application or the motion for new trial.

**2.—Same—Absence of Counsel—No Ground for Continuance.**

The absence of defendant's employed counsel, during his trial, is no legal ground for a continuance, and the court's action in proceeding with the trial of defendant in the absence of such counsel does not violate the constitutional right of defendant to be heard by counsel.

**3.—Indictment—Firm Name—Explanatory Averments.**

Where the indictment alleged the forgery of a note in favor of H. W. & Co., bankers, which is set out in full and which note is a commercial instrument, and the subject of forgery at common law, without explanatory averments, and it not being required to allege intent to injure or defraud a particular person, and the forgery of the bank's name not being involved it was not necessary to allege by explanatory averments who composed said firm, or whether it was incorporated.

**4.—Evidence—Bill of Exceptions—Points Not Reserved.**

Where the defendant failed to reserve by bill of exceptions the court's ruling in admitting in evidence other forgeries by defendant, the same can not be reviewed.

**5.—Charge of the Court—Different Counts.**

Where the court's charge submitted an indictment with two counts, one for forgery and one for passing a forged instrument, but failed to instruct the law applicable to the latter count, and the jury found defendant guilty of forgery, there was no error.

**6.—Same—Circumstantial Evidence.**

Where the defendant admitted signing the note alleged to have been forged, but claimed he had authority to do so, and the party whose name is alleged to have been forged denies such authority, the question of circumstantial evidence was not in the case.

**7.—Same—Other Offenses.**

See charge of court with reference to other forged instruments in this case which it is held did not prejudice defendant.

Appeal from the District Court of Wilson.   Tried below before Hon. M. Kennon.

Appeal from a conviction of forgery; penalty, five years imprisonment in the penitentiary.

The State proved by the testimony of G. P. Palmer, one of the alleged sureties on the alleged forged note, that he had not signed said instrument or authorized any one to sign it for him. Said Palmer also testified that he did not see defendant in Floresville on May 12, 1903, and had no conversation with him, and did not authorize him to use his name on any paper whatever. That he did not see any man named P. S. Johnson there at all. That on the day in question he went to Floresville to buy corn, and that his daughters Maud and Robbie were not with him, but his sister, Miss Agnes Palmer, accompanied him; that defendant was his brother-in-law and that several years ago he went on several notes with defendant, but none since. That he never saw this note until to-day during trial, but had received notice from the banking house of H. W. Wiseman & Co. that they had a note of like amount upon which he was surety and to call and pay same.

The State introduced the alleged forged note and also another note of fifty dollars, dated March 4, 1903, signed by defendant and Leander Hayden, T. C. McDaniel and G. P. Palmer as sureties; also a deed from Leona E. Hayden to defendant conveying 106 2-3 acres of land in Wilson County, dated August 28, 1902, acknowledged and recorded, and thereupon showed that none of the parties whose names appeared as sureties and as officers taking acknowledgment to deed and recording same as clerk, ever signed same or authorized any one to do so for them or either of them.

W. R. Wiseman, of the said banking firm, testified that defendant came to their bank to borrow money; that he wrote out the note set out in the indictment, handed it to defendant and told him if he got acceptable sureties on the note, he would let him have the money. That same day or next, defendant returned with the note signed as alleged; that he accepted the note and passed amount of note to his credit.

W. T. McKinney, the other alleged surety, testified that he had signed said note, because defendant told him that Palmer had signed it.

The defendant testified that on May 12, 1903, he met G. P. Palmer in Floresville, Texas, and spoke about an accommodation note; that Palmer told him that he would help him and if he could get the money anywhere, to use his (Palmer's) name on a note, and that he did so use Palmer's name on the note in question. That while talking to Palmer one P. S. Johnson was in company of defendant and heard Palmer authorize defendant as above stated. That Palmer was accompanied on said day by his daughters, Maud and Robbie.

The court's charge, seventh paragraph, was as follows: "If any evidence has been introduced which tends to show forgery, or passing as true by the defendant any forged instruments, other than the instrument set out in the indictment, you are instructed that you are not to consider such evidence other than as it may, if it does, tend to show the intent with which the defendant signed the name of G. P. Palmer to the note in question. If you find him guilty, say so."

*W. O. McIndoo* and *T. J. McMinn,* for appellant.—Where in an indictment for forgery the beneficiary in the instrument declared on was a banking institution, the indictment should allege whether the institution was a partnership, corporation or joint stock company. Carder v. State, 35 Texas Crim. Rep., 105; Polk v. State, 40 Texas Crim. Rep., 668; Thurmond v. State, 30 Texas Crim. App., 539; White v. State, 24 Id., 231; Black v. State, 61 S. W. Rep., 478; Nasets v. State, 32 S. W. Rep., 698; Webb v. State, 39 Texas Crim. Rep., 534; Colter v State, 49 S. W. Rep., 379.

*Howard Martin,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of forgery, and his punishment assessed at five years' confinement in the penitentiary; and prosecutes this appeal.

Appellant made a motion to continue the case, based on the absence of witness P. S. Johnson and also of his counsel. The sheriff's return was that Johnson could not be found in the county after diligent search. Appellant says he expected to prove by said witness that he was present at the time when G. P. Palmer authorized him (appellant) to sign his (Palmer's) name to said note. In the motion for new trial, which brought up the action of the court overruling the motion for continuance as to the witness Johnson, the State presented an affidavit from the sheriff of Wilson County, which showed that he had lived in said county twelve or fifteen years, and was thoroughly acquainted with the people of said county, and that he had never known a man in Wilson County named P. S. Johnson, and after diligent search could find no such man. There are also affidavits presented by the State, of Maude Palmer and J. M. Worsham, which in effect traverse the account given by appellant in his testimony in regard to Palmer giving him authority to sign said note. Appellant testified "that the authority given by Palmer was on the 12th of May, 1903; and that Maude Palmer and Roby Palmer were with their father, G. P. Palmer, at the time;" and also P. S. Johnson, his absent witness was there. As stated, Maude testified that she and her sister did not go with her father to Floresville on that occasion, and Worsham states, in his affidavit, that on that occasion Miss Agnes Palmer, sister of G. P. Palmer, was with the prosectuor, and that his daughters Maude and Roby were not with him; and that appellant was not present on that occasion. If he was anywhere in the neighborhood he had no knowledge of it. Of course, these affidavits are only referred to for the purpose of supporting the State's view that Johnson was a fictitious witness, and could not be found by the sheriff; and to indicate the improbability that he could have been found at any time and brought into court and testify as alleged.

Appellant insists that the motion for continuance should have been granted because of the absence of his counsel. We know of no authority that would authorize the court to continue a case for the term, because

employed counsel was out of the State on other business.  However, ap-- pellant brought this matter forward again in motion for new trial.  It appears that the attorney who was absent returned from New York before the expiration of the term of the court; and then insisted that the court set aside the conviction.  This was some ten days after appel- lant's first motion for new trial had been overruled and sentence passed upon him.  This new motion was overruled, and appellant assigns this as error.  If the court was correct in overruling the original motion for continuance, this afforded no ground for setting aside the conviction. Appellant insists that the Constitution guarantees to one accused of crime the right to be heard by counsel.  Of course this right is predicated on the proposition that appellant has counsel present at his trial, and desired to be heard.  Employed counsel have no right to interfere with or delay terms of court.  If, after the employment of counsel, such coun- sel expect to be present during the term, he should have arranged some setting of the case with the State.  When counsel left for New York he evidently expected to be absent a considerable portion of the term of court, and before his departure he should have either arranged for the setting of the case at some time when he could reasonably be present, or have engaged other counsel, or had his client to do so.  None of these matters were suggested to the court.  The motion made by appellant on account of the absence of his counsel was not to postpone to some day of the term, but absolutely to continue the case to the next term.  To re- verse the case on the grounds here set up with reference to the absence of counsel would place it within the power of counsel to absolutely con- trol the running of the courts and the disposition of cases.  There was no error in the action of the court.

Appellant made a motion to arrest the judgment because of an al- leged defect in the indictment.  The indictment alleges the forgery to have been on a note for $145, in favor of H. W. Wiseman & Company, bankers; and it nowhere alleges whether H. W. Wiseman & Company was a copartnership, stating the names of the firm members, or a joint stock company, or a corporation.  This is the ground upon which appel- lant urges that the indictment should be quashed and the prosecution dismissed.  He cites us to a number of cases in which it has been held that, where the name of some banking institution is set out in the in- dictment, it is incumbent on the pleader to aver the incorporation of such institution.  White v. State, 24 Texas Crim. App., 231; Thurman v. State, 30 Texas Crim. App., 539, were both indictments for theft, and in each of said cases it was held that, where the ownership is alleged not in an individual, but in a name applicable to a corporation, that the incorporation should be averred.  Nassett v. State, 32 S. W. Rep., 698, and Brown v. State, 43 S. W. Rep., 986, were both cases for swindling and the representations therein alleged were made to the prosecutor, to the effect, that defendant had money in banking institutions.  In Nas- sett's case, the allegation was that the appellant had a deposit with Ball, Hutchings & Company, bankers; and in Brown's case the representation

was a deposit with the Missouri National Bank. In both it was held that it was necessary to allege that the institutions were incorporated. Neither of said cases are authority in a forgery case for pleading the names of the payee or beneficiary in the note or draft, unless it be necessary to aver the party intended to be injured or defrauded, which, under our statute and decisions is not so. Carter v. State, 35 Texas Crim. Rep., 105, was a case of forgery, and the alleged forged instrument was in the shape of a contract in which the parties agreed under certain conditions to become members of "the State Business Men's Association of Texas." In that case it was held that, according to the terms of the instrument, it was not complete, and had never become the subject of forgery. However, it was said in the opinion, that it was necessary to allege, in the indictment, that the "State Business Men's Association of Texas" was a joint stock company, or corporation. This is, perhaps, the only authority cited by appellant in point; but as we have seen the case was decided upon another proposition. In Lucas v. State, 39 Texas Crim. Rep., 48, it was held that where the alleged forged instrument was a draft drawn on the Farmers and Merchants National Bank of Cleburne, that it was not necessary to allege the incorporation of said bank. And in Webb's case, 39 Texas Crim. Rep., 534, which followed this, it was held that where the alleged forged note was made payable to the Dublin National Bank, it was not necessary to aver that said bank was incorporated. And see 2 McClain, sec. 772. This being a mere recital in the body of the check or draft of the payee's name, and it not being claimed that the bank executed or purported to execute the same, it was not necessary to allege the incorporation of the bank.

It may be conceded that the authorities upon this question are not entirely harmonious, but we believe that the instrument here declared on, being a commercial instrument and one which at common law is the subject of forgery without explanatory averments, and it not being necessary to set out in the indictment for forgery an intent to injure and defraud any particular person, that where the instrument is set out in full, and contains as the payees or beneficiaries, a name applicable to a firm of bankers or a corporation, it is not necessary to allege, by explanatory averments, who composed the firm, or whether or not it was incorporated. Of course a different question would arise if the alleged forgery was of a bank's name. We accordingly hold that the court did not err in refusing to quash the indictment.

Appellant also insists that the court committed error in permitting proof of other forgeries. But he can not complain of this inasmuch as no bill of exceptions was reserved to the action of the court in this regard. We would observe, however, it appears from the record that appellant admitted signing the name of G. P. Palmer to the alleged forged instrument, which was the gravamen of the offense charged, but claimed he had Palmer's authority to do so. In this connection it ap-

Vol. 47 Crim.—7.

pears to us that it was competent for the State to show that he had committed other forgeries of Palmer's name.

In motion for new trial appellant excepted to the court's charge because he submitted the two counts in the indictment, but failed to instruct the jury on the law applicable to passing a forged instrument. The jury found appellant guilty of forgery; and even had the court failed to instruct the jury with reference to passing a forged instrument, it would be immaterial. However, we think the charge sufficient in that respect.

He also complains that the court failed to give a charge upon circumstantial evidence. Appellant admitted signing the name of G. P. Palmer to the note and claimed he had authority to do this. He testified positively that he did have such authority, and Palmer testified that he did not. There was no suggestion here of circumstantial evidence, as to the matter of authority in signing said note.

Appellant claims that the instruction of the court with reference to other forged instrument is erroneous, and that the same tends to prejudice defendant, because the jury could be, and probably would be led to infer that the alleged forgery on trial would have some connection or relevancy to the alleged forgery of the deed in the same scheme or system. We do not so construe the charge.

No error appearing in the record, the judgment is affirmed.

*Affirmed.*